Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9652 | **DATE** | 5/17/2002 |
| **CASE TITLE** | Leona's Pizzeria, Inc. vs. Northwestern National Casualty | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/7/02 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion to dismiss count II of the complaint (4-1). Ruling on that motion set for 5/10/02 was vacated. At the status hearing the court will set discovery and trial schedules in this case. Prior to the status hearing, the parties shall confer and provide the court with a **written** proposed discovery schedule. Any motion for summary judgment must be filed within 14 days after the date set in the scheduling order for close of discovery. Any extension of discovery will not extend the time for filing motions for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 21 2002 date docketed | 17 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/17/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **LEONA'S PIZZERIA, INC.**, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 01 C 9652 |
| **NORTHWESTERN NATIONAL CASUALTY COMPANY**, a Wisconsin insurance corporation, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Leona's Pizzeria, Inc. ("Leona's"), an Illinois corporation, sues Northwestern National Casualty Co. ("Northwestern"), a Wisconsin insurance corporation, for breach of an insurance policy and for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Act").[1] Northwestern answered the complaint with regard to the breach of contract claim, but moves to dismiss the claim under the Act. I grant the motion.

I.

Leona's operates thirteen restaurants in the Chicago, Illinois, metropolitan area, and operates a commissary at 3931 South Leavitt in Chicago, where it stores and prepares food for its restaurants. The commissary also houses and operates a laundry for

---

[1] I have jurisdiction over this action under 28 U.S.C. § 1332.

restaurant linens. Leona's had a fire insurance policy with Northwestern that covered the commissary. On October 18, 2000, a fire broke out in the laundry of the commissary, damaging the building to the extent that business could no longer be conducted there and destroying significant amounts of food inventory. Leona's moved the food storage and preparation operations previously performed at the commissary to other restaurant locations and purchases substitute food from outside vendors.

The commissary was shut down for seventeen weeks for repairs, and Leona's incurred $982,944.32 in food costs to outside vendors and business interruption losses, in addition to repair costs of $1,343,525.24. Leona's insurance coverage with Northwestern was sufficient to cover its losses. Leona's made a claim on its policy, and Northwestern made an advance payment of $1,113,370.69 toward the losses. After an investigation, however, Northwestern accused Leona's of falsely and fraudulently inflating its claim, declared the policy void from the outset, and denied the claim in full, demanding a return of $966,631.69. Leona's claims that the investigation was a sham, that there is no evidence to support the allegation that it falsified its claim, and that Northwestern acted in bad faith. In addition, Leona's claims that Northwestern and its parent company were undergoing financial difficulties, of which it did not inform Leona's prior to the purchase of the policy. Leona's also alleges that, two weeks before denying Leona's insurance

2

claim, Northwestern's financial rating was downgraded to a "C-," and that it was because of the downgrade in its own rating that it denied Leona's claim.

For the purposes of this motion, I take the allegations in the complaint as true, draw all reasonable inferences in favor of Leona's, and dismiss only where it is clear that Leona's could prove no set of facts consistent with its complaint that would entitle it to relief under the Act. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

## II.

The Act provides a cause of action for "[a]ny person who suffers actual damages as a result of a violation of this Act committed by any other person." 815 ILCS 505/10a(a). The Act is violated when a defendant uses or employs "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of trade or commerce with the intent that others rely on the fraud, though no person need actually have relied on the fraud. § 2. "Consumer" means any person or corporation "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his business." § 1(c), (e). "Merchandise" includes services, § 1(e), and "[t]he sale of insurance is clearly a service and insureds are thus consumers and within the protection of the Consumer Fraud Act." *Fox v. Industrial Cas. Ins. Co.*, 424

N.E.2d 839, 842 (Ill. App. Ct. 1981).

Northwestern argues that Leona's has alleged no more than a straightforward breach of contract claim, which is not cognizable under the Act and which is preempted by the Illinois Insurance Code, 215 ILCS 5/155. Section 155 of the Insurance Code "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim is vexatious and unreasonable." Cramer v. Insurance Exch. Agency, 675 N.E.2d 897, 900 (Ill. 1996). The Illinois Supreme Court has recognized that:

> an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim. In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.

Id. at 904 (citations omitted). The conduct forming the basis of Leona's claim, as set forth in the complaint, includes: failure to advise Leona's of Northwestern's financial problems; bad faith failure to pay a claim; delay of the claim by a sham investigation; failure to engage in meaningful settlement negotiations or to respond to legitimate inquiries about the claim; and libel and slander of Leona's. Compl. ¶ 56.

With the exception of the failure to disclose the financial problems, none of Leona's claims amount to more than a claim for bad faith denial of a claim under the policy. A claim that an

4

insurer is "lying after the fact to avoid paying [a] claim" amounts to no more than claim for denial of benefits and breach of contract, and is preempted by § 155. *Cramer*, 675 N.E.2d at 905. *See also Combs v. Insurance Co. of Ill.*, 497 N.E.2d 503, 508 (Ill. App. Ct. 1986) (cited with approval in *Cramer*, 675 N.E.2d at 904) (holding that claim of bad faith denial of benefits, framed as claim for intentional infliction of emotional distress, was preempted by § 155). Even if those claims were not preempted, however, they would fail to state a claim for consumer fraud because they amount to no more than a breach of contract. *See Nillson v. NBD Bank of Ill.*, 731 N.E.2d 774, 784-85 (Ill. App. Ct. 1999) (holding that simple breach of contract claim is not cognizable under the Act).

Nonetheless, § 155 leaves the door open for claims that truly sound in tort, particularly fraud. *See Cramer*, 675 N.E.2d at 902. Leona's claims that it was induced to enter the contract by Northwestern's fraudulent suppression of information about its poor financial condition. At least one court in this district has recognized that claims for fraud in the inducement of an insurance policy are not preempted by § 155 and may be cognizable under the act. *See Commonwealth Ins. Co. v. Stone Containter Corp.*, No. 99 C 8471, 2001 WL 477151, at *3 (N.D. Ill. May 3, 2001). However, "any count alleging nothing more than the conduct proscribed by section 155 is preempted by the statute." *Mazur v. Hunt*, 592 N.E.2d 335,

340 (Ill. App. Ct. 1992) (cited with approval in *Cramer*, 675 N.E.2d at 905). Although Leona's does allege that it acted in reliance on the alleged fraudulent omission (I need not decide here whether there was in fact any duty to reveal this information), it claims no additional damages from the fraud itself, beyond what it is already entitled to for a bad faith denial under the Insurance Code. *See Mazur*, 592 N.E.2d at 339. The *ad damnum* clause seeks compensatory and punitive damages in the amount of the loss or the amount due on the policy; the alleged fraud has added nothing, and artful pleading will not save the claim. *See id.*

### III.

I GRANT the motion to dismiss Count II.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated:    May 17, 2002

6